**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **PATRICK EDWIN RUDD, et al.,** : | |
| : | |
| **Plaintiffs,** : | |
| : | **Case No. C2-05-CV-0523** |
| **v.** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| **KeyBank, N.A., et al.,** : | |
| : | **Magistrate Judge Kemp** |
| **Defendants.** : | |
| : | |

<u>**OPINION AND ORDER**</u>

**I. INTRODUCTION**

This matter is before the Court on the following Motions to Dismiss Plaintiff's Amended

Complaint (the "Complaint"): (1) Motion to Dismiss brought by Defendant KeyBank, N.A.

("KeyBank") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to plead

fraud with particularity and failure to state a claim upon which relief may be granted; (2) Motion

to Dismiss brought by Defendant JPMorgan Chase Bank, N.A.'s ("JPMorgan") pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and

failure to state a claim upon which relief may be granted; (3) Motion to Dismiss brought by

Defendants Advantage Bank ("Advantage"), National City Bank ("NCB"), and United

Consumer Services Company ("UCSC") pursuant to Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim upon which relief may be granted; (4) Motion to Dismiss brought by

Defendant Federal Reserve Bank of Cleveland ("FRBC") pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim

upon which relief may be granted; and (5) Motion to Dismiss brought by Defendant CARNOW

Acceptance Corporation ("CNAC") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6) for failure to plead fraud with particularity, lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

For the reasons set forth herein, the Court **GRANTS** Defendants' Motions to Dismiss, with prejudice.[1]

## II. BACKGROUND

On June 14, 2005 *pro se*[2] Plaintiff, Patrick Edwin Rudd ("Rudd") filed an Amended Complaint ("Complaint") against numerous defendants asserting various federal and state law causes of action as well as common law claims. The defendants included: KeyBank; Shawmut Mortgage Co. ("SMC"); Payco General Consumers ("PGC"); JPMorgan; Beneficial Finances ("Beneficial"); Southeastern Ohio Credit Union ("SEOCU"); Advantage Bank ("Advantage"); CNAC; Carmel Ind. ("Carmel"); City Loan; FRBC; Gulf State Mortgage ("GSM"); NCB; RCS; Society Bank ("Society"); Southern Ohio Credit Union ("SOCU"); and United Consumer Financial Services Company ("UCFSC") (collectively, the "Defendants").

---

[1]Because this Court disposes of Plaintiff's Complaint on 12(b)(6) grounds, it need not discuss the merits of Defendants' other Motions to Dismiss based on Rules 9(b) and 12(b)(1).

[2]In each of the Motions that Rudd has filed in this matter, he stresses that he is acting *"in propria persona"* and "N-O-T *pro se*." He argues that by referring to him as *pro se*, the Defendants suggest that he wants to act as a "lawyer (i.e. L-I-A-R). *In propria persona* translates to "in one's own proper person," and refers to representing one's self in court without assistance of an attorney at least "on the record." *See* "In Propria Persona," 'Lectric Law Library at http://www.lectlaw.com/def/i082.htm (last viewed Jan. 20, 2006). *Pro se*, on the other hand, translates to mean "you lose," and the term refers to a person who represents himself in court alone without the help of a lawyer. *See Id*. (defining "Pro Se"). The Court does not believe that Defendants reference to Plaintiff as *pro se* when he professes to be *in propria persona* is fatal to their motions to dismiss. The two terms mean virtually the same thing, and the Court will construe them as such.

Rudd asserts that he has filed his Complaint as a class action against the Defendants on behalf of a class consisting of all "people of the United States of America" who have "entered into a loan, or Mortgage agreement or contracts within or without the State of Ohio with the Defendant banks and credit unions, etc."[3] *See* Complaint ¶ 33.

Rudd alleges that he accepted a number of loans from Defendants for which he pledged, as collateral, his three properties: (1) the Assembly of End-Times; (2) "The Christian Synagogue"; and (3) Mt. Cavalry Fund (collectively, the "Properties"). *See* Complaint ¶¶ 5-8. Plaintiff contends that, in issuing him promissory notes, Defendants "created money out of thin air" and re-loaned this money to Plaintiff as well as the other alleged class-members. *See* Complaint ¶¶ 8-32. Based on his allegation that Defendants did not have sufficient assets to cover the promissory notes they issued to Rudd, he contends that the loans with which Defendants made to him was also worthless, and the money Defendants provided to him was worthless. *Id.* ¶¶ 8-32. Accordingly, Rudd believes that Defendants essentially did not more than loan him his own credit, never putting themselves "at risk." *Id.* According to Plaintiff, the foregoing transactions violated both Sections 8 and 10 of Article I of the United States Constitution.[4] *Id.* ¶¶ 8, 34.

In short, Plaintiff bases his Complaint upon the premise that the alleged "created" money is unconstitutional. Rudd argues that, as such, the Defendants' loans are unenforceable and void,

---

[3]Rudd's alleged class has yet to be certified.

[4]Article I, Section 8 of the Constitution provides: "The Congress shall have Power. . . To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures. . . ." *See* U.S. CONST. art. I., § 8 cl. 5. Article I, Section 10 reads: "No state shall. . . coin Money' emit bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts. . . ." *Id.* art. I., § 10.

that the Defendants engaged in fraud by not disclosing this fact, that the liens placed on his property were fraudulent because no Constitutionally mandated money was provided in exchange for those liens, that any foreclosure actions were an illegal abuse of process constituting conversion, that the Defendants were unjustly enriched by the foreclosure actions, and that the foreclosures resulted in a constructive trust under which the Defendants breached the fiduciary duty they owed to Plaintiff.  *Id.* ¶¶ 11-14; 21, 26, 43-51, 54-56.

Rudd seeks broad relief which includes "[a] declaration that the [D]efendant Federal Reserve Bank System [sic], are equally liable, both jointly and severally, along with the [other] [D]efendant banks and credit unions, etc. with regard to the illegal creation of money and the passing and circulation of such monies unlawfully created by them."  *See* Complaint ¶ 65. Further, Rudd brings a claim that the Defendants, either jointly or severally, pay him and the proposed Class the present value of properties "wrongfully foreclosed upon by them, including all monies received by the Defendants," $30 million in general damages, $90 million in treble damages, as well as exemplary damages, special damages, and attorney's fees[5] to be assigned by the Court – $120 million in total.  *Id.* ¶¶ 74-78.

Many of the Defendants have brought Motions to Dismiss arguing that the Complaint should be dismissed for constitutional, substantive and procedural defects.  Defendants argue that this Court has no subject matter jurisdiction over his case, Rudd has failed to allege facts upon which relief can be granted, and failed to plead those facts with sufficient particularity to

---

[5]It strikes the Court as puzzling that Plaintiff requests attorney's fees when he is appearing in propria persona, especially in that he professes that calling someone a lawyer is the same as calling him a "L-I-A-R."

put Defendants on notice of the specific nature of the claims leveled against them.  The Court's

consideration of Defendants' various Motions to Dismiss follows.

### III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is designed to test "whether a cognizable claim

has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434,

436 (6th Cir. 1988).  In considering such a motion, the Court is limited to evaluating whether a

plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of

action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983).  Dismissal under Rule

12(b)(6) streamlines litigation by "dispensing with needless discovery and fact-finding" on

claims that are legally untenable in the first place.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27

(1989).

All factual allegations made by a plaintiff are deemed admitted and ambiguous

allegations must be construed in his favor. *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394,

400 (6th Cir. 1997).  A complaint should not be dismissed under Rule 12(b)(6) "'unless it

appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which

would entitle him to relief.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.

1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While the complaint need not

specify every detail of a plaintiff's claim, it must give the defendant "'fair notice of what the

plaintiff's claim is and the grounds upon which it rests.'" *Gazette v. City of Pontiac*, 41 F.3d

1061, 1064 (6th Cir. 1994) (quoting *Conley*, 355 U.S. at 47).

Nonetheless, this liberal standard of review does require more than the bare assertion of

legal conclusions.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).

Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. PRO. 8(a)(2). The short and plain statement must "give the defendant fair notice of what plaintiff's claim is, and the grounds upon which it rests." A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id*. (citations omitted).

Moreover, though courts afford *pro se* complaints a measure of leniency, the Sixth Circuit has held that even with such cases, courts should not accept legal conclusions in unwarranted factual inferences. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 2003). *Pro se* plaintiffs are not entitled to a lenient application of the substantive law of a claim. *See Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983).

## IV. ANALYSIS

In filing his Complaint, Rudd makes identical allegations against all of the Defendants. The Defendants have each included in their respective Motions to Dismiss, a Rule 12(b)(6) argument that Plaintiff has failed to state a claim upon which relief may be granted. As such, the Court will consider this argument as it applies to *all* of the Defendants.

Based on the above standard of review, the Court agrees that Plaintiff's Complaint should be dismissed, with prejudice, against all Defendants. As discussed below, Rudd has failed to give Defendants fair notice of the grounds for his claims against them, and it is clear that no relief could be granted under *any* set of facts that could be proven consistent with his allegations.

### A. Lack of Fair Notice to Defendants

Rudd fails to provide sufficient details to put Defendants on notice of the claims he asserts against them.  Though he makes a number of vague allegations against the banking system in general, Rudd does not assert any details specifically against each individual Defendant.  He fails to allege that he was a customer of each Defendant, fails to identify the loans extended to him by each Defendant, and fails to identify any loans on which the Defendants foreclosed.

The absence of these averments is fatal to the Complaint.  Each of Rudd's claims depends upon the existence of a loan transaction between himself and each Defendant.  In failing to identify such loan agreements, Plaintiff does not allege sufficient facts to establish the essential elements of his claims that unspecified loan agreements are void, unconscionable, and unenforceable.  *See Scheid*, 859 F.2d at 436 (stating that, to survive a motion to dismiss, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under *some* viable legal theory.") (quotation omitted; emphasis in original); *Booker v. Washington Mut. Bank, FA*, 2005 WL 1023257 (M.D.N.C. Feb. 11, 2005) (dismissing complaint for failure to state a claim because plaintiff did not allege sufficient facts to establish the essential elements of the claim, and, as a result, the defendants could not mount a meaningful defense).  Instead of making sufficient allegations, Plaintiffs' Complaint makes vague and sweeping conclusory allegations which fail to meet the notice pleading requirements.  *See Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990) (holding that conclusory allegations, unsupported by specific allegations of material fact are not sufficient to satisfy the federal pleading requirements); *Scheid*, 859 F.2d at 436 ("[M]ore than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements.").  Moreover,

Plaintiff has failed to identify any actions taken by any Defendants constituting conversion, unlawful seizure of property, abuse of process, unjust enrichment, breach of fiduciary duty, or constructive trust.

### B. Failure to State a Claim Upon Which Relief May Be Granted

In addition to failing to provide Defendants with fair notice of Plaintiff's claim, the Complaint fails to state a claim upon which relief may be granted.  Rudd argues that the loans allegedly extended by the Defendants provided "fiat money, or money created out of thin air" rather than "real, [g]old or silver backed money that is Constitutionally mandated."  *See* Complaint ¶¶ 11-12.  As a result, Plaintiff's claims hinge upon his assertion that such "created" money is unconstitutional; courts, however, have consistently rejected similar claims under Rule 12(b)(6).

In arguing that the system of lending money in the United States is unconstitutional, Plaintiff cites Sections 8 and 10 of Article I in the United States Constitution. *See supra* note 2. Nonetheless, ever since the Supreme Court ruled in *"The Legal-Tender Cases,"* in 1884, Courts have consistently held that neither of these provisions of the Constitution renders the country's current money-lending system unconstitutional.  *See Julliard v. Greenman ("The Legal-Tender Cases")*, 110 U.S. 421, 447-48 (1884) (holding that Congress has the power of making the notes of the United States a legal tender in payment of private debts, and that such power is not restricted by the fact that its exercise may affect the value of private contracts); *United States v. Rigen*, 577 F.2d 1111, 1113 (8th Cir. 1978) (art. I, § 10 of the Constitution does not "limit Congress' power to declare what shall be legal tender for all debts," and the fact that the type of money in use is neither gold nor silver does *not* render a loan unconstitutional);  *Foret v. Wilson*,

725 F.2d 254 (5th Cir. 1984) (dismissing plaintiff's argument that only gold and silver coin may be constituted legal tender by the United States); *Edgar v. Inland Steel* Co., 744 F.2d 1276, 1277 (7th Cir. 1984) (finding untenable plaintiff's argument that federal reserve notes are not "money" because they are not backed by gold and silver specie); *L.R. Nixon v. Phillipoff*, 615 F. Supp. 890 (N.D. Ind. 1985) (finding that plaintiff's misinterpreted art. I, §§ 8 and 10 of the Constitution, and holding that Section 10 acts only to "remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender"); *Kolb v. Naylor*, 658 F. Supp. 520 (N.D. Iowa 1987) (finding that the loans to plaintiffs constituted the lending of money and the creation of a debt, rather than the creation of money); *United States v. Schiefen*, 926 F. Supp. 877 (S.D.S.D. 1995) (noting that Schiefen's argument that United States currency is unconstitutional "unbacked paper" has been rejected by numerous courts); *State ex rel. White v. Mack*, 757 N.E.2d 353, 355 (Ohio 2001) (citing *Baird v. Cty. Assessors of Salt Lake & Utah Ctys.*, 779 P.2s 676, 680 (Utah 1989)) (finding that the provision in art. I, § 10 of the United States Constitution is not a directive to states to use only gold or silver coins, but is "merely a restriction preventing states from establishing their own legal tender other than gold or silver coins").

*Nixon v. Phillipoff* provides a thorough analysis of why courts consider federal reserve notes to be a constitutional form of legal tender. *See* 615 F. Supp. 893.  In *Nixon*, plaintiff, a *pro se* litigant, sued the individual who had filed a mortgage foreclosure action against him, the clerk of court who had accepted the filing fee for that foreclosure, and the judge who had accepted jurisdiction over the foreclosure. *See id.* at 890.  Plaintiff's argument rested, in part, on his assertion that art. I, §10, clause 1 of the United States Constitution requires a state to accept and

recognize only gold and silver coin as legal tender. *See id*. at 893. The court, however, rejected

Nixon's argument, concluding:

> Nixon's interpretation of article 1, § 10 creates a rather curious inconsistency with article 1, § 8, clause 5. If states can only recognize gold and silver coin as legal tender, then Congress does not have complete power to declare what shall constitute legal tender for payment of all debts, for a declaration that a treasury note or federal reserve note was legal tender would fly in the face of the restriction of § 10. While this is the conclusoin which Nixon wants this court to reach (in effect declaring federal reserve notes illegal), it flies in the face of the clear import of § 8, clause 5's unrestricted language. The power to coin money necessarily carries with it the power to declare what is money, and the constitution does not limit Congress to gold and silver coin. . . It strains logic and constitutional interpretation to claim that the framers of the constitution sought to limit Congress' power to coin money via an implication derived from a restriction directed not at Congress but at the states.

*Id*. at 893. Moreover, the court explained that,

> Nixon has misinterpreted the import of § 10's prohibition. Courts have uniformly interpreted § 10 as prohibiting states from declaring anything other than gold or silver coin as legal tender. . .yet ["*The Legal-Tender Cases*"] do not interpret § 10 as requiring states to accept only gold and silver coin as tender, nor could they, as they both recognize the unrestricted power of Congress to declare what shall constitute legal tender, including bills of credit, treasury notes, and federal reserve notes. In short, § 10 acts only to remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender. Thus. . .the states are constitutionally compelled to accept [federal reserve notes] as legal tender.

*Id*.

In this case, where Plaintiff's arguments all rest on his assertion that, according to art. I, §§ 8, and 10 of the constitution, Defendants unconstitutionally created money, his argument fails as a matter of law. Private parties may enter into transactions to trade whatever they agree upon as having equal value, and they are not limited to gold and silver coins. Rudd alleges that he received $120 million in certified money orders from the Defendants, and that, in return, he pledged his Properties as collateral. Though Plaintiff asserts that Defendants' loans were unlawful because they did not provide him with any "real, gold or silver backed money" as

constitutionally mandated, as evidenced above, Courts have long held that such transactions are both *legal* and *constitutional*.  Hence, Plaintiff's claims are entirely without merit.

### C. Sanctions

This Court notes that some other courts faced with similar suits have demanded that the plaintiff pay sanctions to both the Court and the opposing attorneys.  *See Nixon*, 615 F. Supp. at 901 (finding that where plaintiff, Nixon, filed more than thirty-five baseless documents, motions, affidavits, notices and memoranda, requiring the attorneys of record and the court to read, analyze and respond to each filing, plaintiff was required to pay sanctions of $750.00 in attorney's fees to each defendant, and $500.00 to the court).  This is not the first time Plaintiff has filed suit for such claims, and he is not a stranger to the workings of the federal judicial system; moreover, each of Plaintiff's previous claims has been dismissed.  *See Rudd v. C.I.R.*, 91 Fed. Appx. 699 (1st Cir. Feb. 24, 2004); *Rudd v. U.S.*, 538 U.S. 943, 123 S.Ct. 1636 (2003) (denying certiorari); *U.S. v. Rudd*, 2002 WL 1892721 (4th Cir. Aug. 19, 2002); *Rudd v. U.S.*, 534 U.S. 882 (2001) (denying certiorari); *Rudd v. U.S. District Court for the District of Columbia*, 531 U.S. 1179 (2001) (denying certiorari); *Rudd v. U.S.*, 2001 WL 127711 (4th Cir. Feb. 15, 2001); *Rudd v. Polsner*, 531 U.S. 1090 (2001); *Rudd v. U.S. Court of Appeals for 4th Circuit*, 531 U.S. 1096 (2001) (denying certiorari); *In re Rudd*, 2000 WL 1581026 (D.C. Cir. Sept. 26, 2000) (granting plaintiff's motion to proceed in forma pauperis, but denying plaintiff's petition for writ of mandamus); *In re Rudd*, 230 F.3d 1353 (4th Cir. 2000) (denying plaintiff Rudd's petition for a writ of mandamus seeking an order directing the district court to grant him a certificate of appealability); *Rudd v. Boram*, 217 F.3d 840 (4th Cir. 2000) (affirming the district court's dismissal of plaintiff's claims and finding no reversible error); *Rudd v. Federal*

*Correctional Institute, Cumberland*, 175 F.3d 1016 (4th Cir. 1999) (affirming the district court's dismissal of plaintiff's claims and finding no reversible error); *U.S. v. Rudd*, 1996 WL 171480 (6th Cir. Apr. 25, 1996) (affirming district court's order denying plaintiff, Rudd, bail pending sentence on his conviction for mail fraud and bank fraud).

The Court recognizes that Plaintiff's suit has cost both the Court and the Defendants substantial time and resources. This Court is disinclined to *encourage* such vexatious litigants, and acknowledges that the federal judicial system was not designed to be a pulpit from which plaintiffs may preach. Nonetheless, in this case, none of the Defendants has requested that Rudd pay sanctions to the Defendants or the Court. Accordingly, the Court will not require Plaintiff to pay sanctions.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED**, and this case is therefore dismissed with prejudice.[6]

---

[6]Plaintiff has also filed the following motions: Motion for Default Judgment Hearing; Motion for Probable Cause Hearing; Motion for Default Judgment; Motion in Support of Probable Cause Hearing; Motion to Request that Defendants' Counsel Verify Cambridge State Employee's Credit Union's Position as to it Pertains to Southeastern Ohio Credit Union; Objection to Memorandum Submitted by William Porter on Behalf of Vorys, Sater, Seymour, and Pease, LLP; Objection Regarding Defendant RCS's Answer; Motion in Support of Probable Cause Hearing by Protective Orders Under Rule 26(c) and Objection to Ulmer & Bern's Response; Objection to Response in Opposition re: Motion for Probable Cause Hearing Filed by Defendant JPMorgan; Objection to Response filed by Attorney Slater; Objection to Defendant's Response in Support of Motion to Dismiss Amended Complaint; Motion for Acceptance by the Court of a Treatise to Demonstrate the Urgency of the Court's Granting of a Schedule and Agenda; Motion for Writ of Procedendo; Motion for Writ of Mandamus to Move the Court to Issue the Schedule and Agenda; Motion to Strike Mr. Turner's Memorandum in Opposition to Plaintiff's Writs of Procedendo and Mandamus; Motion Requesting a Status Conference be Set. Because the Court has dismissed Plaintiff's Complaint on all counts, it need not analyze the merits of the foregoing motions.

**IT IS SO ORDERED.**


    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: January 25, 2006**